IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

STEVEN WALKER,                           )
                                         )
                Plaintiff,               )        Civ. No. 05-115-AA
                                         )        OPINION AND ORDER
        v.                               )
                                         )
MULTNOMAH COUNTY, a political            )
subdivision of the State of Oregon;      )
DAN NOELLE, individually and as          )
former Sheriff of the Multnomah          )
County Sheriff's Department; JOHN        )
DOES I-X, individually and as Deputy     )
Sheriff of the Multnomah County          )
Sheriff's Department.                    )
                                         )
                Defendants.              )
_____)

Joseph A. Grube
Ricci, Grube, Aita, PLLC
1601 Second Ave.
1070 Broadacres Building
Seattle, WA 98101
        Attorney for Plaintiff

1 - OPINION AND ORDER

Agnes Sowle
County Attorney for Multnomah County, Oregon
Michelle A. Bellia
Assistant County Attorney
501 SE Hawthorne Blvd., Suite 500
Portland, OR 97214
    Attorneys for Defendants Multnomah County, Dan Noelle, and
    Sheriff Giusto

AIKEN, Judge:

    Plaintiff Steven Walker ("Walker") brought suit against Multnomah County, former Sheriff Dan Noelle ("Noelle"), Sheriff Bernie Giusto ("Giusto"), and John Does I-X of the Multnomah County Sheriff's Department. Walker concedes defendants Noelle and Giusto are dismissed for all purposes. <u>See</u> Def. Ex. 12. Similarly, DOES I-X are also dismissed as plaintiff fails to provide any further information or make any specific allegation against them. Multnomah County is the only defendant remaining in this lawsuit.

    Walker is seeking relief for the following claims: 1) negligence; and 2) violation of his Eighth Amendment rights under 42 U.S.C. § 1983. Defendant moves for summary judgment on both claims. For the reasons given below, defendant's motion for summary judgment is denied.

## I. STANDARD

    Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled

2 - OPINION AND ORDER

to judgment as a matter of law." Fed. R. Civ. P. 56(c). The materiality of a fact is determined by the substantive law on the issue. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The authenticity of a dispute is determined by whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply to evaluating summary judgment motions: 1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and 2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Elec. Serv., Inc., 809 F.2d at 630.

## II. FACTS

Pursuant to Fed. R. Civ. P. 56(c), the court will construe the facts in the light most favorable to Walker. Id. On December 8, 2002, while incarcerated at a Multnomah County Detention Center ("MCDC") at Inverness, Walker suffered a fracture to his finger

3 - OPINION AND ORDER

when he raised his hand to deflect a basketball thrown at his head. He notified the deputy on duty that his finger was injured. He then met with a nurse and told the nurse that he was suffering intense physical pain. He was given Ibuprofen and sent back to his unit. The following day, a Multnomah County employee, Dr. Bane, saw Walker and verified that the little finger on Walker's right hand was broken. Dr. Bane requested x-rays, gave Walker more Ibuprofen and some Vicodin, and splinted and taped Walker's finger. Dr. Bane, however, did not set Walker's finger. On December 10, 2002, with the pain of his injury continuing, Walker was seen by Bob Earl ("Earl"), an orthopedic physician's assistant employed by Multnomah County. Earl took more x-rays of Walker's finger and informed Walker that the fracture was severe and required immediate medical attention. Walker requested immediate medical treatment from jail personnel but was allegedly told by a MCDC staff member that "it's only a finger."

On December 11, 2002, a County office assistant made an appointment for Walker at the Oregon Health Science University ("OHSU") on December 19, 2002. Defendant alleges this was the "earliest possible appointment." Walker continued to suffer intense physical pain, resulting in his filing numerous complaints and grievances with MCDC citing a lack of medical care. Although Walker was seen at OHSU on December 19, 2002, it was not until December 26, 2002, 18 days after his finger was injured, that

4 - OPINION AND ORDER

Walker finally underwent surgery.  Walker alleges that as a result
of MCDC's failure to provide timely medical treatment, his finger
is deformed, and he continues to suffer pain and the permanent loss
of range of motion, as well as incur medical expenses.

III. DISCUSSION

A.   PLAINTIFF'S CLAIM: Negligence

Defendant moves for summary judgment on plaintiff's negligence
claim arguing: 1) Walker failed to file the claim within the
statute of limitations; 2) Walker did not suffer economic damages
as a result of Multnomah County's alleged negligence; and 3) the
acts or omissions of Multnomah County did not cause Walker's
alleged injury.

1. Statute of Limitations

Defendant states that Walker's claim accrued on or before
December 16, 2002, when he drafted a medical request form ("MRF")
in which he threatened to "file [a] grievance then a habeas corpus
tort lawsuit for neglect, and deliberate indifference." Def. Mot.
for Summ. J., p. 13.  Because Walker filed his complaint in
Multnomah County Circuit Court on December 6, 2004, he was within
the two year statute of limitations required by ORS § 30.275(8)
(2006).  Defendant contends, however, that because Walker did not
actually serve the first defendant until December 27, 2004, he was
not within the applicable state statute of limitations.  Defendant
relies on <u>Lawson v. Coos County Sch. Dist. #13</u>, 94 Or. App. 387,

765 P.2d 829 (1988).  I disagree and find Lawson distinguishable.
There, in a tort claim against a public body, a minor's ward waited
three years after the minor's injury before seeking a declaratory
judgment for that injury.  Id. at 389 (affirming defendant's motion
for summary judgment).  Here, in contrast to the facts in Lawson,
there is no dispute that plaintiff filed a complaint within the two
year statute of limitations.

I find that defendant's argument relies upon an overly
technical interpretation of "commenced," which is not supported by
the plain language of Or. Rev. Stat. § 30.275(8).  Section
30.275(8) states that "an action arising from any act or omission
of a public body or an officer, employee or agent of a public body
within the scope of ORS 30.260 to 30.300 shall be commenced within
two years after the alleged loss or injury."  A definition of
"commenced" is not provided in the statute.  The court will not
read an additional unstated requirement into ORS § 30.275(8),
especially one that would create an otherwise non-existent conflict
between Fed. R. Civ. P. 3 and Oregon law.  Under Fed. R. Civ. P. 3,
a case is commenced when the complaint is filed, and because ORS
30.275(8) does not present a contrary definition of "commenced," I
find no reason to require plaintiff to meet a more arduous
standard.  Defendant's summary judgment motion based on the statute
of limitations is denied.

///

2. Economic Damages

Defendant argues that because Walker is not seeking economic damages, Walker is precluded from receiving noneconomic damages.

Under ORS § 31.710(2)(a) (2006), economic damages are described as:

> verifiable monetary losses including but not limited to reasonable charges necessarily incurred for medical, hospital, nursing and rehabilitative services and other health care services, burial and memorial expenses, loss of income and past and future impairment of earning capacity. . .

Id.

As a result of defendant's negligence, Walker argues that he suffered economic damages in the form of past and future medical care and expenses, as well as lost wages and impairment to earnings. Pl. Compl. ¶ 14. Defendant asserts Walker has no evidence he sustained economic damages caused by defendant's alleged negligence. In support of its argument, defendant cites Exhibit 13, a health information report from an injury Walker suffered in 2004. This exhibit, however, does not permit the court to rule as a matter of law that Walker failed to incur economic damages due to defendant's alleged negligence. In fact, Walker has presented evidence that he did incur medical bills. Ex. G: 1-2 to Wolf Decl. Moreover, Walker is also seeking economic damages in the form of lost wages and impairment to earnings. Pl. Compl. ¶ 13.

Defendant relies on Voth v. State, 190 Or. App. 154, 157, 78

P.3d 565 (2003), to argue that Walker must establish economic damages in order to proceed with his negligence claim.  In <u>Voth</u>, the court found it uncontroverted that plaintiff's inability to work resulted from unrelated medical issues and not from defendant's conduct as alleged in plaintiff's complaint.  <u>Id.</u>  The trial court held that no genuine issue of material fact existed regarding whether plaintiff suffered economic damages as a result of defendant's conduct, and the court of appeals affirmed that plaintiff's remaining claims for noneconomic damages were not legally cognizable under ORS § 30.650 (2006).

Unlike <u>Voth</u>, where the court found as a matter of law that plaintiff's inability to work arose from medical issues unrelated to defendant's conduct, here, there exists a question of fact as to whether Walker suffered a physical injury due to defendant's conduct that could merit economic damages for lost wages and impairment to earnings.  Therefore, defendant's summary judgment motion based on plaintiff's alleged lack of economic damages is denied.

3. Causation

Finally, defendant alleges that Walker failed to establish that an act or omission by the County caused his injury.  I disagree and find that there are genuine issues of material fact as to whether defendant's negligence caused Walker's injury. Walker relies on evidence that 1) defendant's conduct of failing

8 - OPINION AND ORDER

to set Walker's finger or immediately scheduling surgery caused a
foreseeable risk of harm; 2) the risks of continued pain and
permanent disfigurement to Walker were significant; 3)
defendant's conduct was unreasonable in light of the risk; 4)
defendant's conduct was the cause of Walker's harm; and 5)
Walker, a prison inmate unable to secure medical assistance
without prison assistance, was within the class of persons and
suffered the kind of injury that made defendant's conduct
negligent. <u>See</u> <u>Graham v. Multnomah County</u>, 158 Or. App. 106, 109-
110, 972 P.2d 1215 (1999).

 Although defendant repeatedly states that the County and
OHSU sought to obtain treatment for Walker as quickly as
possible, there exists a genuine issue of fact as to whether the
County and OHSU could have done more to timely treat Walker's
injury.  Therefore, defendant's summary judgment motion based on
causation is denied.

B. PLAINTIFF'S CLAIM: Deliberate Indifference

 Title 42 U.S.C. § 1983 provides a cause of action for the
"deprivation of any rights, privileges, or immunities secured by
the Constitution and laws" of the United States.  To state a
claim under § 1983, a plaintiff must allege two essential
elements: 1) that a right secured by the Constitution or laws of
the United States was violated; and 2) that the alleged violation
was committed by a person acting under the color of state law.

9 - OPINION AND ORDER

West v. Atkins, 487 U.S. 42, 48 (1988); see also Long v. County
of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006).

The Supreme Court has held that "deliberate indifference" to
the serious medical needs of prisoners amounts to the
"'unnecessary and wanton infliction of pain'" and violates the
Eighth Amendment's proscription against cruel and unusual
punishment.  Estelle v. Gamble, 429 U.S. 97, 104 (1976) (quoting
Gregg v. Georgia, 428 U.S. 153, 173 (1976)); McGuckin v. Smith,
974 F.2d 1050, 1059 (9th Cir. 1992) overruled on other grounds by
WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997)(en
banc); Long, 442 F.3d at 1185.

Thus, to maintain an Eighth Amendment claim based on prison
medical treatment under 42 U.S.C. § 1983, an inmate must show
that he or she experienced "deliberate indifference to serious
medical needs" in violation of the Eighth Amendment, and that he
or she suffered this treatment at the hands of county officials
acting under the color of state law.  Estelle, 429 U.S. at 104;
Long, 442 F.3d at 1185.

A determination of "deliberate indifference" requires an
examination of the seriousness of the prisoner's medical need, as
well as the nature of defendant's response to that need.
McGuckin, 974 F.2d at 1059.  To prove a "serious medical need," a
plaintiff first must demonstrate that failure to treat a
prisoner's condition could result in further significant injury

or the "unnecessary and wanton infliction of pain." Jett v.
Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle, 429
U.S. at 104).  Second, the plaintiff must show that defendant's
response to the need was deliberately indifferent.  Id.;
McGuckin, 974 F.2d at 1060.  Indifference may exist when "prison
officials deny, delay or intentionally interfere with medical
treatment," or it may be shown by the way in which "prison
physicians provide medical care." McGuckin, 974 F.2d at 1059
(quoting Hutchinson v. United States, 838 F.2d 390, 392 (9th Cir.
1988)).  However, an inadvertent or negligent failure to provide
adequate medical care alone does not state a claim under § 1983.
Estelle, 429 U.S. at 105.

     The court notes that municipalities are considered persons
under 42 U.S.C. § 1983 and thus may be liable for causing a
constitutional deprivation when the execution of a government's
policy or custom inflicts the injury.  Monell v. New York City
Dep't of Soc. Servs., 436 U.S. 658, 690 (1978); Long, 442 F.3d at
1186.  In Gibson v. County of Washoe, 290 F.3d 1175, 1185-86 (9th
Cir. 2002), cert. denied, 537 U.S. 1106 (2003), the Ninth Circuit
outlined "two routes" under which a plaintiff can successfully
hold a county liable for inflicting a constitutional injury: 1)
by showing that the county itself violated a right or directed an
employee to do so; or by showing that 2) the county's deliberate
indifference led to an omission in its policies that caused an

11 - OPINION AND ORDER

employee to violate a right.  Walker seeks to pursue liability against defendant under both routes.

To impose liability against a county under the second theory, failure to act, a plaintiff must show that 1) the county employee violated the plaintiff's constitutional rights; 2) the county has customs or policies that amounted to deliberate indifference; and 3) these customs or policies were the moving force behind the employee's violation of constitutional rights. Long, 442 F.3d at 1186 (quoting Gibson, 290 F.3d at 1193-94).

A municipality's failure to train an employee who has caused a constitutional violation can also be the basis of liability under 42 U.S.C. § 1983 where the failure to train amounts to deliberate indifference to the rights of a person with whom the employee comes into contact.  City of Canton v. Harris, 489 U.S. 378, 388 (1989); Long, 442 F.3d at 1186.

Defendant argues that as a matter of law there is no evidence to show that defendant's policies and procedures resulted in deliberate indifference to Walker's medical needs. Walker responds that MCDC has, in fact, no written procedures or protocol in place for treating inmates with fractures requiring immediate emergency attention.  Pl. Ex. E:3 to Wolf Decl.: MCDC Protocol Manual; Pl. Ex. F:2 Dep. of Gayle Burrow at 11. Further, Walker asserts that MCDC houses many inmates with hand and finger fractures, and MCDC employees are aware of this fact.

12 - OPINION AND ORDER

Pl. Ex. A:5 at 21.  Walker argues that because MCDC medical staff knew of the frequency of fractures in the jail, and the final policymaker knew there were not any policies or procedures in place for the treatment of fractures for inmates, a jury could find deliberate indifference on the part of defendant.  Pl. Ex. A:5 at 22; Pl. Ex. F:2 at 10-11.  I agree.

Applying the Ninth Circuit standard for deliberate indifference, Walker's fracture at least raises genuine issues of material fact as to the first requirement under McGuckin, 974 F.2d at 1059.  That is, whether defendant's alleged failure to properly treat Walker's fracture could result in further significant injury or the "unnecessary and wanton infliction of pain."  Id. (quoting Estelle, 429 U.S. at 104); Jett, 439 F.3d at 1096.  Walker must also satisfy the second requirement in the McGuckin test and show that defendant acted with deliberate indifference.  McGuckin, 974 F.2d at 1060.

Walker alleges that he can prove deliberate indifference under various theories.  First, he alleges there is evidence from which a jury could reasonably conclude that the County itself violated Walker's rights under the Constitution by delaying proper medical treatment to a prisoner who was otherwise without recourse.  Gibson, 290 F.3d at 1187.  Second, Walker argues there is evidence from which a jury could reasonably conclude that the County's failures to act caused its employees to violate Walker's

rights, and that those failures amounted to deliberate
indifference under § 1983. Id.; see also Jett, 439 F.3d at 1096
(reversing and remanding summary judgment ruling for defendants
after concluding plaintiff had presented sufficient evidence to
establish defendants were deliberately indifferent to his need to
have his fractured thumb set and cast).

In order to prove that a municipality violated someone's
rights or that it directed its employee to do so, a plaintiff
must show that the municipality's deliberate indifference led to
an omission and that the omission caused the employee to commit
the constitutional violation. Canton, 489 U.S. at 387("our first
inquiry in any  case alleging municipal liability under § 1983 is
the question whether there is a direct causal link between a
municipal policy or custom and the alleged constitutional
deprivation"); Gibson, 290 F.3d at 1186.  Further, a municipality
may be held liable under § 1983 only when the municipality
inflicts an injury pursuant to an official policy; it may not be
held liable under a *respondeat superior* theory. Monell, 436 U.S.
at 694; Gibson, 290 F.3d at 1185.  Finally, to prove deliberate
indifference, the plaintiff must show that the municipality was
on actual or constructive notice that its omission would likely
result in a constitutional violation.  Farmer v. Brennan, 511
U.S. 825, 841 (1994).

I find questions of fact concerning whether defendant acted

with deliberate indifference in not developing additional procedures for the treatment of serious fractures, as well as whether defendant acted with deliberate indifference in failing to hire or train employees who can properly set fractures, when this type of injury is known to occur at MCDC with some frequency. Canton, 489 U.S. at 380 (allegation of a "failure to train" can be the basis for liability under § 1983). The Supreme Court has noted that there may be instances where, because of assigned duties, "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." Canton, 489 U.S. at 390.

To determine whether a municipality itself violated an inmate's rights or directed its employee to do so, a court should review the municipality's "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Gibson, 290 F.3d at 1187 (quoting Monell, 435 U.S. at 690). Here, drawing all reasonable inferences from the record in favor of Walker, a jury could conclude that defendant's policies and procedures, or the lack thereof, regarding medical treatment of fractures violated Walker's Eighth Amendment protections.

///

15 - OPINION AND ORDER

To satisfy their duty not to engage in acts evidencing deliberate indifference to inmates' medical and psychiatric needs, jails must provide medical staff who are "competent to deal with prisoner's problems," Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982); Carnell v. Grimm, 74 F.3d 977, 979 (9th Cir. 1996)("persons in custody ha[ve] the established right to not have officials remain deliberately indifferent to their serious medical needs."). Here, there is sufficient evidence to create an issue of fact as to whether MCDC's medical staff was adequately trained to address Walker's medical needs, and whether the lack of training and lack of specific written policies caused Walker's injury to be treated with deliberate indifference.

To dispute Walker's allegation that defendant's actions or omissions constituted deliberate indifference, defendant relies upon instances in which County medical staff met with Walker; however, as the Ninth Circuit has held, "access to the medical staff has no meaning if the medical staff is not competent to deal with the prisoner's problems." Cabrales v. County of Los Angeles, 864 F.2d 1454, 1461 (9th Cir. 1988) (quoting Hoptowit, 682 F.2d at 1253). Although Walker met with several medical staff members, no staff member set Walker's finger (it was only placed in a splint), and his finger was not surgically repaired until December 26, 2002. Yet, Dr. Bane allegedly said that Walker's finger should have been set or surgically repaired

within one week from the date of his examination.  Def. Ex. 3,
Walker Dep. p. 38, lines 1-5.

To counter claims of deliberate indifference established by
omissions in its policies, defendant relies upon its existing
policies and procedures for the medical treatment of inmates.
However, a jury could reasonably find that these polices are only
general policies and are likely to result in the violation of
inmates' rights to medical care when they suffer fractures
requiring specific emergency medical intervention.  Gibson, 290
F.3d at 1195 (reversed and remanded summary judgment finding
facts from which a jury could find that omission in the county
policy was sufficiently likely to result in violation of
detainee's right to medical care and county was deliberately
indifferent to those needs).  Moreover, the Ninth Circuit has
"consistently found that a county's lack of affirmative policies
or procedures to guide employees can amount to deliberate
indifference, even when the county has other general policies in
place."  Long, 442 F.3d at 1189.

The record indicates that defendant's failure to properly
set Walker's finger or obtain immediate emergency medical
assistance for him raises a question of fact as to whether that
alleged failure was the direct result of an affirmative County
policy that was deliberately indifferent to his serious medical
need.  Under the Farmer standard, there is evidence that could

17 - OPINION AND ORDER

lead a reasonable jury to infer that the County was aware of the
risk that its policies presented.  Farmer, 511 U.S. at 841
(county is liable if it 1) had a policy that posed a substantial
risk of serious harm; and 2) knew that its policy posed this
risk); Gibson, 290 F.3d at 1188-89 (fact issues existed as to
whether a county's policy of delaying medical screening of
combative inmates posed substantial risk of serious harm to
detainee, and whether county was aware of that risk).

     First, a jury could conclude that the policies in place are
inadequate and pose a substantial risk of serious harm.  Here,
for instance, the policies were followed and Walker alleges that
he suffered serious harm as a result.  Therefore, a jury may find
that the policies in place pose a substantial risk of serious
harm to inmates who suffer fractures because they are neither
able to have their fractures properly set, nor their injury
surgically repaired within a critical window of time.  Second, a
reasonable jury may find that prison officials and policymakers
were aware that its policies concerning the treatment of
fractures posed a substantial risk of serious harm.

     For a policy to be the moving force behind the deprivation
of a constitutional right, the identified deficiency in the
policy must be "closely related to the ultimate injury." Long,
442 F.3d at 1190; Gibson, 290 F.3d at 1196.  Walker's burden is
to establish "'that the injury would have been avoided'" had the

18 - OPINION AND ORDER

proper policies been implemented. Id. (quoting Oviatt v. Pearce, 954 F.2d 1470, 1478 (9th Cir. 1992)).  The evidence presented by Walker creates a triable issue as to whether the County's alleged policy deficiencies were the moving force behind Walker's injuries.

Finally, the court notes, the Ninth Circuit's emphasis that "whether a local government has displayed a policy of deliberate indifference to the constitutional rights of its citizens is generally a jury question." Gibson, 290 F.3d at 1194-95; Long, 442 F.3d at 1190-91.

Pursuant to Fed. R. Civ. P. 56, given the rules of construction and inferences drawn in plaintiff's favor, the court finds disputed issues of material fact.  Therefore, defendant's summary judgment motion is denied as to plaintiff's Eighth Amendment claim for deliberate indifference.

CONCLUSION

Defendant's motion for summary judgment and motion to strike Wolf Dec. Exhibit G (doc. 15) are denied.  Finally, defendant's request for oral argument is denied as unnecessary.

IT IS SO ORDERED.

Dated this  29  day of June 2006.


_____/s/ Ann Aiken_____
Ann Aiken
United States District Judge